705 P.2d 85

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Michael A. CALDERO, Defendant-Respondent.**

**No. 15229.**

Court of Appeals of Idaho.

Aug. 5, 1985.

Petition for Review Denied
Nov. 20, 1985.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-appellant.

Eugene A. Marano, Coeur d'Alene, for defendant-respondent.

BURNETT, Judge.

Michael Caldero stands accused of arson, theft and related conspiracies. In this appeal, the State of Idaho asks us to decide whether the district court erred by entering pretrial orders (1) suppressing evidence because it was seized outside the scope of a search warrant, and (2) excluding testimony concerning statements made by an alleged co-conspirator. Based upon these rulings, the district court dismissed, for lack of probable cause, several counts in the prosecutor's information. We affirm.

I

On September 26, 1981, a fire destroyed Caldero's home. While investigating the cause of the fire, a detective with the Kootenai County Sheriff's office obtained a warrant to search the residence of Cindy Paola, Caldero's girl friend. The detective had been informed by one of Paola's friends that Caldero's furniture and personal belongings had not burned but had been stored at the Paola residence. The friend furnished the detective with a description of items belonging to Caldero which she had seen in Paola's house. A list of these items was included in the search warrant.

During the search, law enforcement officers observed other items that had not been listed in the warrant but which appeared on a proof of loss form submitted by Caldero to his insurance company after the fire. The officers sought and obtained a second search warrant authorizing the seizure of these additional items. When the second warrant was executed, officers seized a two-drawer black filing cabinet. This cabinet had not been listed in either warrant and it did not appear on the proof of loss form. The officers did not open the black filing cabinet at the Paola residence but took it to the sheriff's office and opened it there. Inside they found personal papers belonging to Caldero.

Caldero moved to suppress the black filing cabinet and its contents. The first district judge to preside in this case, the Hon. James G. Towles, granted the motion. The judge stated that "it could have been easily ascertained whether or not any items listed on the search warrant were inside the filing cabinet before the cabinet was removed from the premises, and the seizure of the cabinet was uncalled for and illegal under the circumstances of this case." Subsequently, the suppression question was reexamined by Judge Towles' successor in office, Hon. Richard G. Magnuson. Judge Magnuson confirmed the suppression order.

On appeal the state asserts that seizure of the file cabinet was "reasonable" under the totality of the circumstances. The state urges us to blend concepts expressed in recent opinions of the United States Supreme Court. The state suggests that *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which creates a federal good faith exception to the exclusionary rule where search warrants are unsupported by probable cause, and *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which adopts a "totality of circumstances" standard for determining probable cause, together signify that if a search under warrant is "reasonable," any resultant seizure is valid regardless of whether the items seized were within the scope of the warrant.

■ We disagree. The state's emphasis upon "reasonableness" disregards the fourth amendment's warrant clause. It treats the amendment as nothing more than a broad proscription against "unreasonable" searches and seizures. Upon this hypothesis the state contends that any "reasonable" search or seizure is permissible. But the fourth amendment's warrant clause cannot be made to disappear by semantic sleight of hand. The amendment specifically requires that warrants issue upon probable cause and that they "particularly" describe the "things to be seized."

■ We acknowledge, of course, that *Gates* and *Leon* have diminished the importance of probable cause in the fourth amendment's warrant clause. *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct. App.1984). However, it cannot be inferred from the Supreme Court's derogation of probable cause that the particularity requirement is also under attack. The requirements of probable cause and particularity serve different purposes.

> [There are] two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause.... The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings.... The warrant accomplishes this second objective by requiring a particular description of the things to be seized.

*Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

■ In our view, the particularity requirement is as important today as it was to the framers of the fourth amendment. It protects all citizens from unduly broad intrusions upon the privacy of their persons, houses, papers and effects by government agents. As noted by one distinguished authority:

> If the police, upon obtaining entry to a house under a search warrant, were permitted to seize any item, regardless of its connection with crime and regardless of whether they knew the item was on the premises, the requirement that a warrant particularly describe the items to be seized, and that only items for which probable cause exists be seized, would be meaningless. In effect, a warrant to enter the premises to search would be a general warrant in actual execution, if not in form.

W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 6.5(a), at 6–24 to –25 (1979 with 1984 Supp.).

■ The state also urges a less sweeping justification for the seizure of an item outside the scope of the warrant. The state contends that the file cabinet was in "plain view." The "plain view" doctrine—sometimes described as an exception to the warrant requirement but occasionally viewed as a limitation upon the fourth amendment itself—is comprised of three elements: (1) An officer legitimately must be in a position to view the object. (2) It must be immediately apparent to the officer that the object may be evidence of a crime. (3) The officer must not have known previously that the object was located where he seized it. *See Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983). In the present case, the first and third parts of the "plain view" test have been satisfied. The officers had a right to be in Paola's home to execute the search warrants. Moreover, the record contains no suggestion that the officers were aware of this particular file cabinet before they entered the home.

■ However, the second element is problematic. The record fails to show how it could have been immediately apparent to the officers that the file cabinet might be of evidentiary value. The "plain view" doctrine "requires that an officer of reasonable caution, under the cumulative facts of the case, recognize the items as probably being related to *criminal* activity." *State v. Fowler*, 106 Idaho 3, 12, 674 P.2d 432, 441 (Ct.App.1983) (emphasis added). Here, the officers had no reason, disclosed by the record, to believe that the black filing cabinet belonged to Caldero. Paola's friend had not mentioned it as an item observed at Paola's residence. Neither had it been listed by Caldero on the proof of loss form.

■ We have considered the possibility that Caldero's personal papers inside the file cabinet might have furnished the necessary link to criminal activity. It would have been permissible for the officers to look inside the cabinet for items, such as a

manuscript, listed in the search warrants. Had they done so, the personal papers would have been discovered. However, as Judge Towles observed in his suppression order, the officers did not open the cabinet and find the papers until the seizure already had occurred and the cabinet had been removed from the house.

 It might be argued that the distinction between opening the cabinet at Paola's residence and opening it at the sheriff's office is insignificant. But the application of the fourth amendment's warrant clause turns, as it must, on what law enforcement officers actually do, not upon what they might have done. More fundamentally, the fourth amendment does not countenance the seizure of a container, such as the file cabinet, which is outside the scope of any warrant and which bears no outwardly apparent connection with any crime, simply for the purpose of searching it later. The Supreme Court recently has noted the constitutional limitation upon seizing containers:

> Although in the context of personal property, and particularly containers, the fourth amendment challenge is typically to the subsequent search of the container rather than to its initial seizure by the authorities, our cases reveal some general principles regarding seizures. In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the fourth amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.... Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, *if* the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present ....

*United States v. Place*, 462 U.S. 696, 700, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983) (emphasis added). In this case, the officers had no "probable cause to believe that [the file cabinet contained] contraband or evidence of a crime." Neither does the record disclose "exigencies of the circumstances ... or some other recognized exception to the warrant requirement," justifying the warrantless seizure of the file cabinet.

 We conclude that the file cabinet and its contents were improperly seized. The suppression order entered by Judge Towles, and confirmed by Judge Magnuson, must be upheld.

## II

We now turn to the exclusion of hearsay testimony concerning statements made by Caldero's alleged co-conspirator, Paola. The testimony was given by Paola's friend at the preliminary hearing. The friend testified that she and Paola discussed the fire at Caldero's house:

> I told Cindy [Paola], I said, "Cindy, I'm not stupid. I mean, all the furniture is in your house," you know .... And then she said, "Well, at least Mike [Caldero] and I aren't stupid .... At least we hired somebody."

The question, as it has been framed by the state, is whether the foregoing testimony, assuming it to be hearsay, comes within the co-conspirator exception to the hearsay rule. Judge Magnuson ruled that it did not. He held that the exception applies only to statements made by a co-conspirator in furtherance of the conspiracy. The state now argues that the judge applied the exception too narrowly.

 The co-conspirator exception has been succinctly described as follows: "If A and B are engaged in a conspiracy, the acts and declarations of B, occurring while the conspiracy is actually in progress and in furtherance of the design, are provable against A ...." E. CLEARY, McCORMICK ON EVIDENCE § 267, at 792 (3d ed. 1984). This exception has found a place in Idaho case law. *See, e.g., State v. So*, 71 Idaho 324, 231 P.2d 734 (1951); *State v.*

*Brooks*, 103 Idaho 892, 655 P.2d 99 (Ct. App.1983).

In other jurisdictions, two differing interpretations have emerged with regard to the phrase "in furtherance of" the conspiracy. The "usual rule" is that the co-conspirator's acts or declarations must have occurred "while the plan was in existence and before its execution or termination." J. WEINSTEIN & M. BERGER, 4 WEINSTEIN ON EVIDENCE § 801(d)(2)(e), at 176 (1981). The United States Supreme Court has adopted this rule for the federal courts. *See Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). In *Krulewitch* the extrajudicial statement of a co-conspirator, made after the conspiracy had ended, was held not to have been in furtherance of the conspiracy. Justice Black, writing for the Court, stated:

> [I]t is firmly established that where made in furtherance of the objectives of a going conspiracy, such statements are admissible as exceptions to the hearsay rule. This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts. The Government now asks us to expand this narrow exception to the hearsay rule and hold admissible a declaration, not made in furtherance of the alleged criminal transportation conspiracy charged, but made in furtherance of an alleged implied but uncharged conspiracy aimed at preventing detection and punishment. No federal court case cited by the Government suggests so hospitable a reception to the use of hearsay evidence to convict in conspiracy cases. The Government contention does find support in some but not all of the state court opinions cited in the Government brief. But in none of them does there appear to be recognition of any such broad exception to the hearsay rule as that here urged. The rule contended for by the Government could have far-reaching results. For under this rule plausible arguments could generally be made in conspiracy cases that most out-

of-court statements offered in evidence tended to shield co-conspirators. We are not persuaded to adopt the Government's implicit conspiracy theory which in all criminal conspiracy cases would create automatically a further breach of the general rule against the admission of hearsay evidence.

336 U.S. at 443–44, 69 S.Ct. at 718–19 (footnote omitted).

The second interpretation of the phrase "in furtherance of" the conspiracy is called the "Georgia rule." *See, e.g., Evans v. State*, 222 Ga. 392, 150 S.E.2d 240 (1966). In *Evans* the Georgia Supreme Court allowed the admission of testimony regarding statements during a "concealment phase" of the conspiracy, more than one year after commission of the underlying crime. The *Evans* case ultimately reached the United States Supreme Court on collateral review. The Court, despite *Krulewitch*, sustained the Georgia Supreme Court's decision and said the states could adopt whichever rule they chose. The confrontation clause of the sixth amendment was held not to mandate one rule in preference to the other. *See Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

 Until recently, Idaho had not expressed its choice between the two rules. Although *State v. Thomas*, 94 Idaho 430, 489 P.2d 1310 (1971), has been said to embrace the "Georgia rule," the decision dealt with a tangled web of overlapping exceptions to the hearsay rule. However, the newly adopted Idaho Rules of Evidence (I.R.E.) appear to evince a preference for the federal approach. Rule 801(d) provides in pertinent part as follows:

> (d) Statements which are not hearsay. A statement is not hearsay if—
>
> · · · · ·
>
> (2) Admission by party-opponent. The statement is offered against a party and is ... (E) *a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.* [Emphasis added.]

Thus, the rule essentially equates testimony concerning an extrajudicial statement by a co-conspirator with testimony by the co-conspirator himself concerning an extrajudicial statement by the defendant. Both types of testimony are treated by Rule 801(d) as an admission by a party opponent and are deemed to be nonhearsay, rather than exceptions to the hearsay rule.

▮ The counterpart federal rule of evidence is identical. It logically follows that the federal limitation upon extrajudicial statements by co-conspirators, which excludes statements made during the "concealment phase" of a conspiracy, should now apply in Idaho. Indeed, this implication is emphasized in the commentary to I.R.E. 801(d). The comments assume that the *Thomas* decision would allow evidence of statements made during the "concealment phase." The comments state that the new rule "would change the Idaho law on this point."

▮ There is no impediment to applying the Idaho Rules of Evidence to a pending case, such as the one before us, which has not yet been tried. *See* I.R.E. 1103. Evidence of Paola's extrajudicial statement plainly would not be admissible to prove the charges of arson or conspiracy to commit arson. Those crimes had been completed when the statement was made. Neither do we believe that evidence of the statement would be admissible to prove grand theft, or conspiracy to commit grand theft, from Caldero's insurance company. Although those crimes arguably were incomplete when the statement was made, since the insurance company had not paid any money, in no realistic sense could Paola's statement be regarded as "in furtherance of" such a conspiracy. We conclude that Judge Magnuson's exclusion of testimony concerning this statement was correct.

The rulings and orders of the district court are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.