746 P.2d 1054

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Frederick BIGGS,
Defendant–Appellant.**

**No. 16479.**

Court of Appeals of Idaho.

Dec. 4, 1987.

Michael F. Peacock, Kellogg, for defend-
ant-appellant.

Jim Jones, Atty. Gen., David R. Minert,
Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

John Biggs was charged with first degree burglary and grand theft. He filed motions to suppress items of evidence and to dismiss the action. Following the district court's denial of both motions, Biggs entered a plea of guilty to second degree burglary conditioned on his right to appeal. I.C.R. 11(a)(2). He contends that (1) the district court erred in failing to suppress evidence which resulted from the initial search of his vehicle by Montana police officers; (2) the search warrant obtained subsequent to the initial search was issued without probable cause and was based on an application which contained numerous misrepresentations; and (3) certain items seized during a second search, conducted after issuance of the search warrant, were outside the scope of the warrant and should be excluded. We hold that the district court properly denied the motions and affirm the judgment of conviction.

On January 12, 1985, certain valuables were stolen from a home in Shoshone County, Idaho. On January 21, 1985, Montana Highway Patrolman C.R. Larson stopped the vehicle of John Biggs because of a defective taillight. A warning was issued and Biggs was released. When Officer Larson radioed to the Sheriff's office in Townsend, Montana, he was told to follow Biggs and await the arrival of Sheriff Rick Barthule who had an outstanding bench warrant for Biggs' arrest on a misdemeanor charge unrelated to this appeal. Biggs stopped at a bar in Winston, Montana. Officer Larson followed him into the bar, effected the arrest, and put Biggs into the patrol vehicle to await the arrival of the warrant. Sheriff Barthule and Deputy Raymond Price arrived shortly thereafter.

Although the facts are in dispute at this point, substantial evidence exists to support the district court's finding of the following facts. When the warrant arrived Biggs was frisked, revealing two hypodermic syringes, a .22 magnum bullet and other items. Sheriff Barthule then presented Biggs with a copy of the arrest warrant. When asked whether he preferred that Sheriff Barthule drive his vehicle to Townsend or that the vehicle be towed, Biggs responded that the sheriff would not drive his vehicle. Biggs then requested that someone retrieve his wallet from the front seat of the vehicle. Sheriff Barthule asked Biggs where the keys were, to which Biggs replied they were inside the vehicle. When the officers opened the front passenger door to retrieve the keys and Biggs' wallet, they saw the remnants of marijuana cigarettes in the open ashtray.

Biggs was thereafter booked into jail and the vehicle was towed to a county impound shop in Townsend. The following day Sheriff Barthule visited the shop and, by looking through the closed windows of the vehicle, observed the marijuana and what he perceived to be additional evidence of narcotics. Based on these observations, he applied for and received a search warrant to look for drugs and paraphernalia in Biggs' vehicle. In the course of his search, Sheriff Barthule found several items described on a list of the property stolen in the January 12 burglary in Idaho.

Biggs was charged in Idaho with first degree burglary and grand theft. Following denial of his motions to suppress the evidence and his motion to dismiss, he entered a conditional plea of guilty to second degree burglary and brought this appeal. Biggs' primary argument centers on the characterization of the officers' actions on the night of his arrest. Biggs is not asserting that there was no probable cause for making the arrest. Rather, relying on *State v. Carlson*, 198 Mont. 113, 644 P.2d 498 (1982), Biggs submits that the Montana officers violated his rights by refusing to accept bail for the misdemeanor warrant in lieu of effectuating a full custodial arrest. Therefore, he asserts that the officers' intrusion into his vehicle was unlawful, rendering inadmissible any evidence later seized. We disagree.

## THE INITIAL INTRUSION

Prefatorily, we note that the state has not attempted to uphold the search of Biggs' vehicle based upon the search incident to arrest doctrine. The state contends

that Biggs gave his consent to the officers to enter his car for the purpose of retrieving Biggs' wallet and keys. The state relies upon the plain view doctrine to support the seizure of the automobile and the subsequent search. Nonetheless, absent Biggs' custodial arrest the officers would not have had occasion to view the interior of Biggs' vehicle. Thus, we focus initially on Biggs' arrest.

In Montana a peace officer may accept bail in lieu of a full custodial arrest when the arrest warrant specifies the amount of bail. MONT.CODE ANN. § 46-9-303 (1986). In *State v. Carlson, supra,* the Montana Supreme Court addressed the issue whether the defendant had consented to a search of his home after being arrested at his door step on a misdemeanor warrant. The court found no consent. In buttressing its conclusion, the court questioned the reasonableness of the custodial arrest because of a defect in the warrant itself—issued for failure to appear when the summons to appear had not been sent. The court determined that the arresting officers failed to consider the bail option which, if exercised, would have cancelled the officers' need to be within the defendant's home. The factors persuasive in *Carlson* are not present here. The warrant for Biggs' arrest was not defective. Moreover, the court in *Carlson* recognized that the opportunity to bail is merely an option for peace officers and the option may be subject to the standard operating procedures of a locality. *State v. Carlson, supra,* 644 P.2d at 502.

■ The warrant for Biggs' arrest did include the bail amount. However, it is obvious that the sheriff chose the full custodial arrest option. It is not clear whether this was the sheriff's standard operating procedure. Nevertheless, we will not be so presumptuous as to question a Montana sheriff's decision to make a custodial arrest when such action is a viable option. We have not been shown any indication that the sheriff's actions in making the arrest were unlawful. When Biggs arrived at the sheriff's office he asked to bail out. A sheriff's deputy telephoned a local judge,

informed him of Biggs' arrest, and further informed the judge of the observations of the controlled substances in Biggs' vehicle. The judge stated that Biggs could be held until the morning for arraignment. In our view, the Montana officers did not violate Biggs' rights. We hold that the custodial arrest of Biggs was effectuated in a lawful manner. We now examine the lawfulness of the subsequent search of Biggs' vehicle.

■ As noted, the state contends that the initial entry into the car was not a "search," but rather was a limited entry for a limited purpose with the consent of Biggs. In Idaho, consent must be voluntarily given, may be express or implied, and must not result from coercion or duress. *State v. Post,* 98 Idaho 834, 573 P.2d 153 (1978), *overruled on other grounds, State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981). Montana, where the search occurred, requires that the consent be unequivocal and intelligently given. *State v. Carlson, supra.*

The district court made no findings whether Biggs voluntarily consented to the initial entry or whether the entry was illegal. The court bypassed these questions, holding that the search warrant itself was obtained in good faith and that under the so called "good faith" doctrine enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the exclusionary rule should not be invoked. We cannot take this uncertain short cut. The initial entry into the vehicle cannot be isolated from the arrest itself. The entry, which produced grounds for impounding the vehicle, occurred as the direct result of the arrest. If the officers' own illegal acts produced the evidence of probable cause for issuing a search warrant, then the "good faith" rule espoused in *Leon* has no applicability.

Biggs concedes that after he was arrested, handcuffed and placed in a patrol car, he requested Deputy Price to retrieve his wallet which was on the driver's seat of his car. Biggs denies that he ever gave Sheriff Barthule permission to enter the car. The district court found that Biggs asked an officer to get his wallet, and that Sheriff

Barthule then asked Biggs "where the car keys were in order to lock the car, to which Biggs replied, they were in the car." This finding is supported by the evidence. When the car door was opened Price retrieved the wallet. Apparently, in doing so, he did not notice any evidence of controlled substances. About the same time, the sheriff, who was looking for the keys, saw what he believed to be marijuana butts and a roach clip in the ashtray. The sheriff closed the car door, waited for the tow truck to arrive and later told his deputies he was going to seek a search warrant because of a possible narcotics violation.

■ Given these facts, we conclude that it is not necessary to determine whether the state has shown that Biggs "consented" to the entry by the officers into his car. For if the arrest was valid, the officers had the right to enter the car for the limited purposes found by the district court.

■ Here, the arrest of Biggs at a rural tavern temporarily deprived him of the custody and control of his automobile. In such circumstances where the automobile will be left unattended for any period of time the officers owe some duty to the owner to avoid theft of the owner's property. An objection by Biggs to the officers taking any protective measures might have satisfied or avoided even this duty. In spite of an owner's objections, however, an officer has the right to take reasonable measures to protect himself and his department from claims for lost property for which the officers might be held responsible.

The State of Montana has a constitutional provision regarding searches and seizures similar to Idaho's. Additionally, the Montana constitution contains a "Right of Privacy" clause. Mont. Const. Art. 11, § 10. The Montana Supreme Court has honored these constitutional provisions by setting high standards of reasonableness which must be met on search and seizure issues. *See, e.g., State v. Carlson, supra; State v. Sawyer*, 174 Mont. 512, 571 P.2d 1131 (1977), *overruled on other grounds, State v. Long*, 700 P.2d 153 (Mont.1985). *Sawyer* indicates, however, that when an officer is faced with the duty of protecting an owner's property from loss and protecting himself from claims for lost property, an officer may secure and take "an inventory of any valuable items in plain view from outside the vehicle, rolling up the windows, locking the doors, and returning the keys to the owner." [1] 571 P.2d at 1134. These actions necessarily require some minimal intrusion into the vehicle itself. We believe the officers here stayed within the limitations.

Accordingly, we hold that the officers were not engaged in a search. The officers were free to observe what lay in plain view. Where officers are in a place where they are legally entitled to be and where their positioning is not a mere pretext to make legitimate an otherwise impermissible intrusion, Montana allows for the warrantless seizure of evidence they observe in plain view. *State v. Carlson, supra; State v. Sawyer, supra; accord Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Coplen*, 541 F.2d 211 (9th Cir.1976); *State v. Pontier*, 95 Idaho 707, 518 P.2d 969 (1974). It is widely held that the observation of that which is in plain view is not a "search." *State v. Carlson, supra; State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983); *Sherer v. State*, 502 S.W.2d 143 (Tex.Crim.App.1973); *State v. Seagull*, 26 Wash.App. 58, 613 P.2d 528 (1980). Biggs failed to establish that the officers' actions were a pretext meant to justify otherwise illegal activity. No proof was offered to show that any of the officers intended to discover or undertook to locate incrimina-

---

1. Sheriff Barthule testified that he did not find the keys in the car. Where they were at this time is not clear. The sheriff testified that a booking slip showed the keys were listed as part of Biggs' possessions accounted for at the jail. The report of Deputy Price, who searched Biggs at the place of arrest, does not mention the keys as an item of property found on his person at that time. The report shows Price "recovered two syringes from [Biggs'] left jacketpocket, along with $39.52 from his pants pocket, 1 comb, 1–22 mag bullet, 1 package of tums, 1 pack of gum."

ting evidence of any sort when they entered the vehicle.

Under these facts, a search warrant is unnecessary and the officers need not blind themselves to evidence within plain view. Because the officers' actions, valid under Montana's more narrowly interpreted constitutional clauses for vehicular searches, are equally valid under the United States Constitution, the exclusionary rule will not be invoked. *State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981).

## THE SEARCH WARRANT

■ Biggs next questions the sufficiency of the probable cause upon which the search warrant issued. Initially he contends that Sheriff Barthule presented false and misleading statements in the application for the search warrant. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), requires that a threshold showing be made by the accusing party that the evidence was false and made knowingly and intelligently or with reckless disregard for the truth. Upon such a showing, the evidence must be set aside and the finding of probable cause shall be reviewed upon the remaining evidence. *Id.* Both Idaho and Montana have adopted the *Franks* approach. *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979); *State v. Sykes,* 663 P.2d 691 (Mont.1983).

■ Biggs advances two arguments. He first contends that the illegality of the initial intrusion into his vehicle undermines the validity of the search warrant application. As Biggs points out, the initial intrusion is not mentioned in the search warrant application. Biggs urges that this omission is one of many examples of Sheriff Barthule's bad faith or willful and wanton disregard for the truth. However, the legality of the intrusion has been established. Inclusion of the event in the search warrant application would likely have aided in establishing probable cause. Exclusion, whether accidental or intentional, could not prejudice Biggs. In his order denying Biggs' motions, the district judge found that "[t]here is nothing in the record to

suggest more than an innocent or a negligent representation of the truth...."

■ Biggs also asserts that the conflicting versions of the intrusion contained in the officers' reports and their testimony shows the officers' reckless disregard for the truth in this case. The officers' reports were written by three different individuals on different days following the arrest. That they contain three different points of view on the events of that night is not remarkable. We conclude that Biggs has failed to establish that the search warrant application contains false or reckless statements. We therefore address Biggs' probable cause argument based on all the evidence presented to the magistrate.

The question of the existence of sufficient probable cause for issuance of a search warrant is measured on the facts of the case at hand. *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976). While according great deference to the magistrate's determination, *id.,* we must determine on review whether the magistrate had a substantial basis for finding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Prestwich,* 110 Idaho 966, 719 P.2d 1226 (Ct.App.1986). We also note that probability, not a prima facie showing, of criminal activity is the standard for probable cause. *Illinois v. Gates, supra; State v. Crabb,* 107 Idaho 298, 688 P.2d 1203 (Ct.App.1984).

■ Sheriff Barthule's application for the search warrant mentioned four basic points: (1) the seizure of the two hypodermic "needles" from Biggs at the time of the frisk; (2) the discovery of a white package and a Pyrex test tube both containing white powder believed to be methamphetamine, three marijuana roach butts, and a roach holder, all of which Sheriff Barthule observed through the window of Biggs' vehicle after it had been impounded; (3) Biggs' past and current involvement in narcotics trafficking and methamphetamine use, including information of investigations of Biggs by the Federal Bureau of Investigation and the Drug Enforcement Agency for drug trafficking; and (4) an incident

allegedly connecting Biggs with nearly a pound of 95% pure methamphetamine. Without reaching the third and fourth points, we find that the first two points provide sufficient probable cause on which the magistrate could have issued a search warrant for narcotic substances. As discussed, Sheriff Barthule's "discovery" of the enumerated items was lawful. His extensive narcotics background added weight to his opinion that the items were drug connected. These items and the two hypodermic syringes found on Biggs when he was frisked, provided sufficient evidence of the probability of criminal activity and the likelihood that narcotics would be found in the vehicle. *State v. Turnbeaugh*, 110 Idaho 11, 713 P.2d 447 (Ct.App.1985).

## SCOPE OF THE SEARCH WARRANT

Finally, Biggs contends that certain items of evidence should be suppressed even if the warrant itself is upheld. He claims that the seizure of a chain saw and old coins, alleged to have been proceeds of the Idaho burglary, was beyond the scope of the search warrant which allowed only for seizure of certain drugs or paraphernalia. He argues that the officers did not know about the existence of the items until the actual search took place. Hence, he continues, they had no probable cause to believe the items were in the vehicle and therefore could not seize them under the warrant. But knowledge of the items' existence is irrelevant to the issue here, for the state does not assert that the items come within the purview of the search warrant. The issue is whether the discovery and seizure of the stolen property is justifiable.

The officers possessed a valid warrant, having established sufficient probable cause to search the vehicle for narcotics and paraphernalia. Other evidence of a crime discovered during a lawful search may, under certain circumstances, be seized even though it is not included within the scope of the search warrant. *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983). Where the evidence seized does not bear a reasonable relation to the purpose of the search, however, the state must advance a legal justification for the seizure. *Id.* This is the situation facing us here.

One recognized justification, advanced by the state in this case, is the plain-view doctrine. To properly establish this doctrine's applicability, the state must meet three requirements. First, the officers must legitimately be in a position to see the evidence. *State v. Caldero*, 109 Idaho 80, 705 P.2d 85 (Ct.App.1985); *State v. Carlson, supra.* The district court properly found that the officers had a legal right pursuant to the search warrant to search both the trunk and the glove compartment of Biggs' vehicle where the burglary evidence was found.

Second, the incriminating evidence must be inadvertently discovered. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *State v. Caldero, supra; State v. Carlson, supra.* At the time of the search, the officers were aware that Biggs was suspected in the Idaho burglary. The officers were also aware of what items were stolen. However, the officers had no reason to suspect that the stolen property was in Biggs' vehicle. The officers were in the process of a search for narcotics and paraphernalia when they uncovered the evidence in question. The record shows no indication that the discovery of the stolen property was premeditated. Indeed, our review of the actions of the officers confirms that the stolen property was inadvertently discovered.

Finally, the incriminating nature of the items must be immediately apparent to the officers. *Texas v. Brown, supra; State v. Caldero, supra.* Biggs would have us interpret "immediately apparent" as requiring a near certainty of the incriminating nature. Such an unduly narrow reading has been rejected. *Texas v. Brown, supra; State v. Fowler, supra.* Instead, the phrase requires that the officers entertain a belief that the items are probably related to criminal activity. *Texas v. Brown, supra; State v. Fowler, supra; accord State v. Smith*, 102 Idaho 108, 626 P.2d 206 (1981). As noted, the officers had knowl-

edge of Biggs' suspected involvement in a burglary, and they knew what items had been stolen. The probability of the connection between the evidence seized and the Idaho burglary would be immediately apparent to the officers upon discovery of the items. Hence we find that the seizure of the allegedly stolen items, although beyond the scope of the search warrant, was lawful.

The judgment of conviction for second degree burglary and the district court's order denying Biggs' motion to suppress evidence and motion to dismiss are affirmed.

WALTERS, C.J., and BURNETT, J., concur.