**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51422**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Filed: November 18, 2025** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| CORY CORDOVA, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Oneida County. Hon. Robert C. Naftz, District Judge.

Judgment of conviction for possession of a controlled substance and use or possession with intent to use drug paraphernalia, <u>affirmed</u>; order denying motion to suppress, <u>affirmed</u>.

Christensen & Jensen, P.C.; Kristen C. Kiburtz, Salt Lake City, Utah, for appellant.

Hon. Raúl R. Labrador, Attorney General; Elizabeth H. Estess, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Cory Cordova appeals from his judgment of conviction for possession of a controlled substance and use or possession with intent to use drug paraphernalia. Cordova claims the district court erred in denying his motion to suppress. Cordova also contends the district court abused its discretion by admitting drug laboratory results without proper foundation. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a search warrant, police searched Cordova's residence for items stolen from Cordova's ex-girlfriend. Among the items listed in the search warrant were two rings: a "gold 10th-anniversary ring with an appraisal of $47,000" and a "wedding ring set with an appraisal of $30,000." The officers located film canisters, including two canisters containing Fuji speed 200 film and "Kodak Gold" film, respectively, as well as a pipette (tube), partial pipette, and a mirror. The Kodak film canister contained a white powdery substance on the bottom of the film and in the

1

canister. Of the evidence tested from Cordova's residence, only the residue found on the roll of the Kodak film tested positive for cocaine. Ultimately, the search resulted in none of the items listed in the search warrant being found. Cordova was charged with possession of a controlled substance (cocaine), Idaho Code § 37-2732(c)(1) and use or possession with intent to use drug paraphernalia, I.C. § 37-2734A(1).

Before trial, Cordova filed a motion to suppress all evidence that was discovered or seized during the search of his residence. Cordova argued that the search exceeded the scope of the search warrant because the officers searched for drugs making the search illegal; it was unreasonable for the officers to assume the rings were inside a film canister as the canister was transparent or semi-transparent; the officers could see there was film inside the canister; and the rings were too large to reasonably be contained inside the canister containing the film. The district court denied the motion on the basis that the search of Cordova's residence did not exceed the scope of the warrant, and the plain view exception to the warrant requirement applied as to both the items seized and the white substance on the film in the canister which tested positive for cocaine.

At trial, Cordova objected to the admission of the State's drug lab report during the lab technician's testimony which identified the residue on the Kodak film as cocaine. Cordova argued that the State failed to lay proper chain of custody foundation for admission of the report. The State responded that further testimony from the officers and the lab technician would demonstrate that the cocaine tested in the lab report was the same as that seized from Cordova's residence. The district court overruled Cordova's objection and permitted the lab tech to "testify as to what she did and the report she generated" and admitted the lab report. At the conclusion of the trial, Cordova brought an Idaho Criminal Rule 29 motion for acquittal on the same grounds as the objection, that foundation had not been presented to show a proper chain of custody for the evidence on which the lab result was based. The district court denied the motion. Cordova was found guilty of possession of a controlled substance and possession of paraphernalia. Cordova appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

2

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Cordova claims that the district court erred in denying his motion to suppress. Cordova contends the district court erred in failing to suppress all evidence because the officers flagrantly disregarded the scope of the warrant. Specifically, Cordova asserts the officers searched for drugs and pornography, which was outside the scope of the warrant. In addition, Cordova contends that the plain view exception does not apply to allow the officers to seize and open the film canisters. In addition, Cordova argues the district court erred in admitting the drug lab testing evidence at trial because the State failed to establish a proper chain of custody between the item seized at Cordova's residence and the item which tested positive for cocaine. The State responds that the district court correctly denied the motion to suppress as the officers did not flagrantly disregard the scope of the warrant and the items seized were in plain view. The State also argues the district court did not err in admitting the drug lab test result.

### A. Motion to Suppress

Cordova argues the district court erred by failing to suppress all evidence seized during the search as the officers flagrantly disregarded the scope of the warrant when looking for drugs and pornography. In addition, Cordova contends the district court erred in finding that the evidence seized was in plain view and not subject to suppression.

3

1. **Exceeding the scope of the warrant**

Cordova claims the officers' search was in flagrant disregard of the scope of the warrant. Consequently, Cordova argues that *all* evidence seized must be suppressed. The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen against unreasonable searches and seizures. "A search pursuant to a warrant will exceed the scope authorized if officers seize property not specifically described in the warrant and the seizure does not fall within one of the exceptions to the warrant requirement, or if officers search a location not specifically described or authorized." *State v. Teal*, 145 Idaho 985, 989, 188 P.3d 927, 931 (Ct. App. 2008) (internal citation omitted).

Cordova asserts that, while not directly addressed, the Court in *State v. Bussard*, 114 Idaho 781, 787, 760 P.2d 1197, 1203 (Ct. App. 1988) "cited approvingly" the Tenth Circuit decision in *United States v. Medlin*, 842 F.2d 1194 (10th Cir. 1988), which held that "flagrant disregard" of a warrant's terms transforms the warrant into an illegal general warrant, requiring suppression of *all* evidence. The *Medlin* decision was not "cited approvingly" by the *Bussard* Court. Instead, the *Bussard* Court only cited *Medlin* as a "compare" cite after stating the general law in Idaho that "when a search exceeds the scope permitted by a valid (or partially valid) search warrant, the entire search ordinarily is not rendered invalid. Rather, only the property unlawfully seized will be suppressed. *State v. Holman*, 109 Idaho 382, 389, 707 P.2d 493, 500 (Ct. App. 1985)." *Bussard*, 114 Idaho at 787, 760 P.2d at 1203. Thus, the rule in *Medlin* has neither been adopted nor cited with approval in Idaho.

As Cordova notes, other states and federal courts have applied the *Medlin* rule, however, holding flagrant disregard will only be found in egregious cases. In *People v. Helzer*, 541 P.3d 489 (2024), the court stated:

> In arguing that wholesale suppression is required here, defendant relies on federal precedent finding such a remedy appropriate in certain "extraordinary" circumstances (*U.S. v. Foster* (10th Cir. 1996) 100 F.3d 846, 852 (*Foster*)) in which officers conducting a search exceeded the parameters of the authorizing search warrant to such an extent as to render the search a general one (*ibid*.; see also *U.S. v. Uzenski* (4th Cir. 2006) 434 F.3d 690, 706; *U.S. v. Liu* (2d Cir. 2000) 239 F.3d 138, 140; *U.S. v. Chen* (9th Cir. 1992) 979 F.2d 714, 716).
>
> "Without passing upon the question ourselves, we previously have acknowledged that a majority of the federal circuits recognize the remedy of blanket suppression in a sufficiently egregious case." (*Kraft*, *supra*, 23 Cal.4th at p. 1044, 99 Cal.Rptr.2d 1, 5 P.3d 68, citing *Bradford*, *supra*, 15 Cal.4th at pp. 1304-1307, 65 Cal.Rptr.2d 145, 939 P.2d 259.) But as we explained, courts in these cases

4

"rarely have actually concluded that police conduct was so extreme as to warrant total suppression. The remedy has been justified when the police exceeded the 'scope of the warrant in the places searched' [citations], the police used the warrant as a pretext to search for evidence of unrelated crimes [citation], or the police were motivated '"by a desire to engage in indiscriminate 'fishing'"' rather than by 'considerations of practicality' [citation]. The mere magnitude of the seizures does not establish a violation of the federal Constitution." (*Bradford*, at p. 1306, 65 Cal.Rptr.2d 145, 939 P.2d 259, fn. omitted.)

Indeed, in *Medlin*, the court found flagrant disregard when a local police officer accompanied federal officers with a warrant to search for weapons and the local officer "combed" the residence for stolen property, collecting some 667 items. *Medlin*, 842 F.2d at 1195-96. Moreover, some courts have limited flagrant disregard application to the places searched, not the items seized. In *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007), the court stated:

> Garcia first argues that the officers engaged in an unlawful "general search" of his residence in violation of the Fourth Amendment. The phrase "general search" embodies a specific Fourth Amendment term of art, accompanied by particular rules, policies, and remedies. A search pursuant to a valid warrant may devolve into an invalid general search if the officers "flagrant[ly] disregard . . . the limitations of [the] search warrant." *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir.1985). For purposes of general search analysis, we will find that an officer flagrantly disregards the limitations of a warrant only where he "exceed[s] the scope of the warrant *in the places searched*" (rather than the items seized). *See Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984) (emphasis added); *see also United States v. Decker*, 956 F.2d 773, 779 (8th Cir.1992) ("The flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places searched, and not to cases in which the government indulges in excessive seizures."). The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant. *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir.1999).

Even if we were to assume that a disregard for the scope of a warrant could be so flagrant as to demand exclusion of all seized evidence, as opposed to just the items seized outside of the warrant, Cordova has not demonstrated such excess in this case. Cordova argues that "the officers were not limiting their search to the items in the warrant but instead were actively searching for drugs and other contraband in flagrant disregard of the warrant's terms." Cordova points to body camera video footage of the officers in which the officers can be seen holding prescription bottles,

examining a pill and commenting on the nature of the items examined.[1]  One officer testified that it is routine to seize unmarked or questionable pills for later testing.  The district court held that Cordova failed to show, through testimony or evidence, the standard protocols that law enforcement must use in executing search warrants.  While it is not clear why the district court deemed the protocols important in analyzing a claim that a search exceeded the scope of the warrant, it may be understandable in the context of a claim of flagrant disregard.  Regardless, because the officers searched the place listed in the search warrant, the above caselaw indicates there was no flagrant disregard for the warrant.  Moreover, the officers were searching for rings, and a film canister is a plausible place to hide a ring.  Thus, the officers were looking for items listed in the search warrant in places those items could be hidden.  This does not demonstrate a flagrant disregard of the warrant's terms.

2.      **Plain view**

Under the Fourth Amendment, individuals are entitled to protection from unreasonable searches and seizures by law enforcement without a warrant supported by probable cause to describe with particularity the places to be searched and the items to be seized.  *State v. Claiborne*, 120 Idaho 581, 586, 818 P.2d 285, 290 (1991).  If a party exceeds the scope of a warrant, evidence does not require suppression if there is justification.  *State v. Biggs*, 113 Idaho 595, 601, 746 P.2d 1054, 1060 (Ct. App. 1987).  The plain view exception to the warrant requirement does not require evidence to be suppressed if it is in an officer's plain view while searching for items particularly described in a warrant.  *Bussard*, 114 Idaho at 787-88, 760 P.2d at 1203-04.  The plain view doctrine requires:  "(1) An officer legitimately must be in a position to view the object.  (2) It must be immediately apparent to the officer that the object may be evidence of a crime.  (3) The officer must not have known previously that the object was located where he seized it."  *State v. Caldero*, 109 Idaho 80, 84, 705 P.2d 85, 89 (Ct. App. 1985).

---

[1]      Cordova also points to a very limited exchange where the officers are discussing whether or not some unknown object may contain child porn, concluding minutes later that it did not. Without any context to what was being examined, no conclusion as to whether it exceeded the scope of the warrant can be made.  Therefore, this evidence does not support Cordova's claim of flagrant disregard of the scope of the warrant.

### a.     Plausible repository

The district court found that the search for the rings in the film canisters did not exceed the scope of the warrant, and the plain view exception applied to the cocaine residue on the Kodak film that was located inside one of the canisters. As to the first *Bussard* requirement, the district court held that the film canister was a plausible repository for a ring. Cordova contends the plain view exception does not apply because it was unreasonable for the officers to believe the ring(s) described in the warrant could be inside a film canister. Cordova argues the canister was transparent or semi-transparent. Therefore, the officers could see that the container did not contain a ring, but rather, a roll of film took up the entire canister. Moreover, even assuming the officer could not see through the film canister, once the officer opened the canister, it would be apparent that the canister had film inside of it and not a ring. Consequently, the examination of the canister should have ended without manipulation of the film, which was necessary to locate the white substance on the film.

Pursuant to a validly issued warrant, a container in a residence may be searched if it is reasonable for a government agent to believe the item(s) described in the warrant could be located therein. *State v. Lewis*, 170 Idaho 267, 271, 509 P.3d 1196, 1200 (2022). This Court has also found that officers searching for items pursuant to a valid search warrant are not "limited to what is immediately apparent on sight," but are entitled to search plausible repositories without being in violation of a search warrant. *State v. Smith*, 119 Idaho 11, 13, 802 P.2d 1223, 1225 (Ct. App. 1990) (where evidence is compact and able to be concealed under or within closed drawers, officers removing drawers to look in or under them does not require evidence to be suppressed as it is a plausible repository).

Substantial and competent evidence supports the district court's finding that the canister was a plausible repository of items described in the warrant. As to whether the canister was large enough to hold a ring, Cordova argued in the district court that, physically, a canister was not large enough and an officer's testimony that a ring could fit inside the cap was speculative. Cordova does not expressly make this claim on appeal. Nonetheless, the officers were briefed prior to the search and were aware of the appraisal value of the rings and that they were women's rings.

The district court correctly concluded:

> It is not unreasonable to believe a film canister can act as a container for other items. Without knowing the purported size and shape of the rings reported stolen, it is not

7

unreasonable for [the officers] to believe one or both of the film canisters could contain rings. A film canister is a plausible repository for rings.

Similar to *Smith*, where the items in the warrant were small enough to fit in or under drawers, the officers understood the rings to be a size where they could reasonably fit inside the canister. Cordova has shown no error in the district court's factual finding that the canister was a plausible repository in the sense of being large enough to hold rings.

Cordova argues that, even if the canister was large enough to hold a ring, because it was at least semi-transparent, the officers could see that it contained film instead of rings and, therefore, the plain view exception could not apply. Cordova asserts that because the officers could see there was film in the canister, there was no basis to manipulate the film to look for a ring. The officer overseeing the search testified that he could not have known whether the canister had been altered to conceal evidence and that he had hollowed out the center of a roll of film to show how rings could be concealed inside. An officer also testified at the suppression hearing that he would not have been able to determine whether the canister would have been altered to conceal evidence without opening it himself. Manipulating the film to determine whether the film was altered to conceal a ring inside was reasonable and within the scope of the plain view exception. Based on the record, the district court's finding that a canister and its contents were within plain view is supported by substantial and competent evidence.

### b. Immediately apparent

Cordova argues the district court erred in finding that the nature of the white substance on the film and canister was immediately apparent, satisfying the second *Bussard* requirement. If officers seize items while executing a valid search warrant and it is immediately apparent to the officer "the incriminating nature of the items," the seizure is justified under the plain view doctrine. *Bussard*, 114 Idaho at 788, 760 P.2d at 1204 (items that are likely tied to criminal activity do not need to be particularized on a search warrant to be seized when they meet this standard). In *Texas v. Brown*, 460 U.S. 730, 742-43 (1983), an officer saw a balloon filled with an unknown substance and its connection to criminal activity was immediately apparent "to the trained eye of the officer" because it is common for balloons to be used in hiding narcotics. "Absolute certainty is not required" by an officer in the belief the item seized to be contraband or related to criminal activity. *State v. Tamez*, 116 Idaho 945, 946, 782 P.2d 353, 354 (Ct. App. 1989). This Court in *Tamez* held that an officer may rely on his training and experience in determining whether an item is

8

contraband or connected to criminal activity, so long as the officer uses "reasonable inferences." *Id.*

Substantial and competent evidence supports the district court's finding that it was immediately apparent that the white substance was a possible controlled substance. Cordova asserts that the officer's testimony was conclusory as the officer did not articulate any facts or specialized knowledge that the white substance was a possible controlled substance, so the criminal nature could not be immediately apparent. The officer testified:

| | |
|---|---|
| DEFENSE COUNSEL: | When you saw the white substance within the container, was there anything about it that caused you concern that it might be a controlled substance? |
| OFFICER: | I mean it was a white powder at the time inside a sealed container. I don't remember my exact thoughts or feelings at the time of what I was looking at . . . . |
| DEFENSE COUNSEL: | Based on the white substance the look of the white substance, and the location of that white substance, at the time were you concerned that it might be a controlled substance? |
| OFFICER: | Yes. |
| DEFENSE COUNSEL: | And what controlled substance might--would that normally lead you to believe that it might be? |
| OFFICER: | Well, there was a few that came to mind, either methamphetamine or cocaine. |
| DEFENSE COUNSEL: | Okay. And they both can be a white substance? |
| OFFICER: | Yes. |

The officer also testified that he had over five and one-half years working in law enforcement and further training in identifying controlled substances "by look." Additionally, the officer testified in the suppression hearing that another officer stated that he saw the white powder residue from the outside of the canister, before he took the lid off. Photo evidence from the execution of the search warrant provide that the officer located the film canister with the white substance located near possible paraphernalia (mirror, syringe, and pipettes). Being proximate to possible paraphernalia would give an officer cause that an unknown, white substance may be connected to criminal activity or a controlled substance. Items may be found as probably related to criminal activity because they were found in close proximity to other items involved in illegal activity, justifying the seizure under the plain view doctrine. *Bussard*, 114 Idaho at 788, 760 P.2d at 1204.

Cordova contends the district court apparently accepted that the intrinsic nature of the white substance indicted a controlled substance. Cordova suggests that many common substances look

9

like a white powder and that reliance on the intrinsic nature of a substance as a controlled substance is legally insufficient. However, based on the evidence discussed above, the district court did not rely on an intrinsic nature of the white substance to concluded that the officer reasonably believed it to be a controlled substance. The officer's testimony and the surrounding circumstances lead to the reasonable conclusion that the white substance was probably a controlled substance, namely, cocaine. The district court did not err when it found it was immediately apparent that the white substance in the film canister may be related to criminal activity.[2] Accordingly, Cordova fails to demonstrate error in the district court's denial of his motion to suppress.

**B.     Drug Lab Results Evidence**

Cordova argues the district court abused its discretion when it admitted the drug lab report with test results identifying the white substance in the film canister as cocaine. Cordova claims the State failed to lay proper chain of custody foundation for the evidence to ensure the item tested was the same as that seized from Cordova's residence and in the same condition. In response, the State claims it was not required to lay foundation for the canister in order to admit the lab report and that the lab technician provided foundation for the report. In addition, the State argues that to the extent it was required to establish chain of custody for the item tested, it did so through the testimony at trial.

Idaho Rule of Evidence 901 governs the authentication or identification of evidence. It requires the party offering an item to produce sufficient evidence "to support a finding that the item is what the proponent claims it is." I.R.E. 901(a). In weighing the admissibility of the evidence, the trial court should resolve in all reasonable probability, that the proffered item has not been changed in any material respect. *State v. Campbell*, 104 Idaho 705, 715, 662 P.2d 1149, 1159 (Ct. App. 1983). A party can satisfy the requirements under I.R.E. 901 by offering chain of custody evidence to create a presumption it was not materially altered (although it is not a separate requisite for admissibility). *Campbell*, 104 Idaho at 715, 662 P.2d at 1159. Mere speculation that the evidence was mishandled or tampered with is insufficient to establish a break in the chain of custody. *State v. Kodesh*, 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct. App. 1992). If there is only the barest doubt or speculation that mishandling or tampering occurred, this should only be considered when weighing the proffered evidence and thus be admitted by the district court. *Id.*

---

[2]     Cordova does not contest the third *Bussard* requirement.

10

Because the matter at hand is a criminal proceeding, the item must be in substantially the same condition when offered into evidence as it was when the crime was committed. *State v. Crook*, 98 Idaho 383, 384, 565 P.2d 576, 577 (1977).

Cordova objected to the drug lab test results as the laboratory technician had not provided foundation for admission of the report. Cordova contended that because the chain of custody for the item tested by the lab technician was not established through testimony or in another manner before Cordova objected, the report should not have been admitted. Before Cordova's objection, the only testimony presented to the jury had been that of the lab technician on direct examination by the State. The State responded that it would provide evidence through later testimony that would establish the chain of custody but that it should not preclude the lab technician from testifying as to what she did to test the film for cocaine and her conclusions. The district court overruled the objection and allowed the lab technician to testify both as to what she did and the report she generated.

As to the admissibility of the lab technician's testimony and drug lab results, the lab technician testified that she received the evidence in a properly sealed envelope with identification regarding the chain of custody on the front and its origin from the Oneida County Sheriff's Department. The lab technician further testified regarding the lab's internal chain of custody that it follows upon the evidence's arrival to the drug lab and its identification process each time the evidence is moved. In doing so, the lab technician testified there was no discrepancy in the chain of custody at the lab. Further, the lab technician illustrated that the substance found and tested on the film was cocaine by describing the testing policy and procedures the facility adheres to and used in this case. The testimony of the lab technician established the proper handling and testing of the evidence by the drug lab and the ultimate admissibility of the test result.

In regard to the evidence of chain of custody for the canister, Cordova argues the evidence documenting the items seized at his residence was lacking. Cordova contends the State simply provided vague testimony from the officers that they seized items on Cordova's dresser and from his top dresser drawer. The State provided several pictures of what was on and in Cordova's dresser drawer. Nonetheless, Cordova argues that evidence is not helpful as there are at least two rolls of Kodak film that can be seen in the photos, but the officers testified only one of the rolls had a white substance on it. However, the officer testified that the film canister had residue on the inside and outside of it as well as a white powdery substance located at the bottom of the canister,

11

and he found that film canister in the dresser drawer in the northeast bedroom. This substance was tested by the officer on scene, and it was presumptively positive for cocaine. The officer also testified that the pictures of the evidence that were presented as exhibits were accurate representations of what was found and seized by law enforcement at Cordova's residence. The officer further testified that policy for the Oneida County Sheriff's Department is to take photos of all evidence before seizing it. An officer testified that items depicted in the photographs admitted during trial were the same as the items he saw when he went into the northeast bedroom twice during the search. The officer's testimony and exhibits at trial established foundation for the identity of the items seized.

Cordova argues that foundation regarding the cataloguing and packaging of the items seized was insufficient to establish the tracking of the items. The officer in charge of collecting and transferring the seized items testified as to the normal process for documenting items seized and their transfer and documentation to the sheriff's office. An officer testified to the chain of custody when the items seized from Cordova's residence arrived at the Oneida County Sheriff's Department. The officer testified that another officer took the items into evidence but that he was directly involved in keeping the evidence for purposes of chain of custody at the department. Upon the evidence arriving, the officer filled out forms and put the evidence into a temporary evidence locker. Cordova notes that the receipt for the property seized was not introduced into evidence. Nonetheless, the officer testified that upon receipt, the evidence is stored in the temporary evidence locker until the contents are verified and the envelopes are filled out with the appropriate description. In this case, the removal of the items from the temporary evidence locker did not occur for more than one and one-half years after the time the items were seized from Cordova's residence. However, the officer testified that the delay was simply due to the department being busy.

In this case, there were two envelopes associated with items that were allegedly seized from Cordova's residence and introduced at trial--envelope 1 (Def. exhibit A) and envelope 2 (Def. exhibit B). As to envelope 1, the inventory listed "film, canisters, tube, and mirror." Cordova argues that there was only one canister, instead of "canisters," but fails to show how there being only one canister in the envelope affects the chain of custody of the film tested. In addition, Cordova asserts that, instead of "film," the envelope contained two rolls of film, the Fuji film and the Kodak film. However, the use of the term "film" on the inventory list does not limit the

description to only one roll of film. Further, Cordova argues that the inventory lists "tube" when the content was a pipette. But a pipette is a type of tube. These alleged discrepancies are not material. Minor discrepancies in the documentation of evidence are not sufficient to demonstrate a failure to establish chain of custody. In *Kodesh*, this Court cited approvingly to *Johnson v. State*, 625 P.2d 1270 (1981 OK CR 31). In *Johnson*, there were discrepancies of dates on an evidence envelope and a delay in delivery of the exhibit to the laboratory. *Id.* at 1271. However, the court found that mere discrepancies in dates did not create sufficient doubt about the chain of custody such that the evidence should not be admitted because an officer had constant possession of the envelopes with the evidence until they were delivered to the laboratory for testing. *Id.* Even if there were any doubts about the authenticity, it would be a question for the jury to resolve. *Id.* at 1272. While evidence descriptions are not dates, the chain of custody is not undermined whether an item is categorized as singular or plural.[3]

In regard to shipping the evidence to the state lab, the overseeing officer testified he was the first individual to take the evidence out of the temporary evidence locker as illustrated by his log on the evidence envelope "D. Williams." The officer then sealed the envelope with red tape and provided it to the other officer to send out to United States Postal Service. The other officer created and entered the exhibit number and then sent it to the state lab.[4]

The Kodak film tested positive for cocaine. Cordova argues that there was evidence from the search that there were two Kodak film rolls. However, even if such were the case, the chain of custody for the film shipped and tested positive for cocaine was established. Whether other evidence viewed at the residence was seized or not or entered into the temporary evidence locker does not change the chain of custody for the item tested. There is no evidence or argument that some film other than that seized at Cordova's residence was tested. The evidence at trial was sufficient to establish chain of custody for the items tested in the drug lab and the results thereof. The district court did not abuse its discretion by admitting the drug lab report.

---

[3]     The description of items in the other envelope are immaterial.

[4]     While Cordova asserts the State failed to establish that the evidence was in the same condition as when seized, he provides no basis to conclude otherwise.

13

## IV.
## CONCLUSION

The district court did not err by denying Cordova's motion to suppress the evidence seized at Cordova's residence and admitting the drug laboratory report.  Therefore, Cordova's judgment of conviction and the district court's denial of his motion to suppress are affirmed.

Judge HUSKEY and Judge TRIBE **CONCUR**.