760 P.2d 1197

STATE of Idaho, Plaintiff–Respondent,

v.

Roy BUSSARD, Defendant–Appellant.

STATE of Idaho, Plaintiff–Respondent,

v.

David MASON, Defendant–Appellant.

Nos. 16282, 16303.

Court of Appeals of Idaho.

Aug. 18, 1988.

Paul R. Kroeger, Post Falls, for defendants-appellants.

Jim Jones, Atty. Gen., by Peter C. Erbland, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

These consolidated appeals present a troubling and recurrent question—whether persons accused of crimes should be convicted upon evidence relating to other crimes not charged. The question is raised here by Roy Bussard and David Mason. They were tried jointly in the district court of Kootenai County, where a jury found them guilty of committing two burglaries and related thefts. On appeal they assert that the trial judge erroneously admitted evidence connecting them with other burglaries. They further contend that certain physical evidence should have been suppressed because it was obtained by unlawful searches and seizures. For reasons set forth below, we agree that the evidence of other crimes was admitted improperly. Accordingly, we vacate the judgments of conviction. For guidance on remand, we discuss and uphold the trial judge's ruling on the suppression issue.

I

One day in early 1985 two Kootenai County homes were burglarized. At one home the burglary was accompanied by theft of a safe containing some documents and a music box. At the second home there was a theft of jewelry, currency and coins. A sheriff's deputy investigating the first burglary learned from an eyewitness that three men had been seen taking a box from the house and placing it in a car. The witness had followed the car and had obtained the license plate number. Armed with this information, the officer determined that one John Davis was using the car at the time of the first burglary.

Davis was arrested later that day. While being interrogated, he implicated Roy Bussard and David Mason in both burglaries. Based on Davis' statements, conversations with other personnel in the sheriff's office, and his own investigation, the deputy sought and obtained arrest warrants for Bussard and Mason as well as a warrant to search Mason's residence. The arrest warrant for Bussard was executed at the Kootenai County courthouse, where Bussard was appearing in an unrelated judicial proceeding.

Several officers executed the arrest warrant for Mason, together with the search warrant for his residence. Immediately after the officers entered his home, Mason was taken into custody and transported to the county jail. During the subsequent search, the officers found and seized many of the items reported stolen and listed in the search warrant. However, the search did not yield all of the items listed on the search warrant. Based on their interrogations of Davis, the sheriff's deputies believed that Bussard's car had been used during the second burglary and that some of the missing items were likely still in the car. Accordingly, officers located and impounded the vehicle which was parked in a lot adjacent to the courthouse. The car was towed to a Sheriff's Department facility. Subsequently, deputies obtained a warrant to search the car for the missing items.

The search of Mason's residence had consumed several hours. A handwritten list of all items seized was prepared and posted in the house. The items confiscated were stored and a typewritten inventory was prepared. The officer in charge of the investigation presented the list and search

warrant to the court clerk. Somehow the original list and warrant were lost. So far as the record shows, they never were found. Several days after the arrests, a preliminary hearing was held before the same magistrate who had issued the search warrant. The prosecutor placed in evidence a copy of the list of items seized during the search.

As a result of the evidence produced at the preliminary hearing, the magistrate found probable cause to bind both defendants over to the district court. Their cases were consolidated. Before trial, Bussard and Mason jointly moved to suppress evidence obtained in the searches of the home and automobile. Mason contended that the search of his home was invalid because the original warrant and the original list of items seized had not been returned to the issuing magistrate as directed by I.C. § 19–4415 and I.C.R. 41(d). Mason also asserted that the search warrant was impermissibly broad in scope. Bussard argued that his car had been seized improperly because no warrant was obtained before the car was impounded. Moreover, he argued that the search warrant eventually issued for the car was invalid because it was not supported by a showing of probable cause that the items sought were actually located in the vehicle.

The trial court granted the suppression motion in part. Some of the items seized at the residence were suppressed. However, the trial judge concluded that neither of the searches had been so defective as to be entirely infirm.

Subsequently, both defendants also filed motions in limine, seeking to exclude evidence of other, uncharged crimes. They sought to bar testimony that they had met while incarcerated in the Idaho State Correctional Institution and that Mason was on parole when the two burglaries were committed. More importantly, they sought to exclude testimony by Davis implicating them in several other burglaries. The motion was granted in part and denied in part. The prosecution was barred from presenting evidence concerning both defendants' prior criminal histories and the circum-

stances under which they became acquainted. However, the judge deemed evidence of the uncharged burglaries to be admissible as relevant to a "common scheme or plan." Following trial both men were convicted on all counts. These appeals followed.

## II

We begin our analysis with the evidence of uncharged crimes. By the motion in limine mentioned above, and later by objections made at trial, the defendants sought to exclude all evidence pertaining to various burglaries committed prior to the charged burglaries. Evidence of the prior burglaries was presented when Davis testified that he, Mason and Bussard had committed a total of six or seven burglaries together.

According to Davis, the three men committed these crimes by identifying houses believed to contain valuables, calling the houses by telephone to determine whether they were occupied, and visually checking the houses with binoculars. If satisfied, the men would approach a chosen house at night in one car. Two of them would leave the car and enter the house by forcing a door. The third man would act as a lookout and communicate with the others by walkie-talkie. Wearing rubber gloves, the two inside the house would remove pillow cases from the beds and fill them with jewelry, cash and other easily carried valuables. After escaping in the car, the three would return to Mason's residence. There they would separate the valuables (items quickly converted to cash) from the other items. They would stash the valuable goods at Mason's residence and later sell them to a buyer in Washington. They would take the non-valuable goods to the Spokane River and drop them into the river from a specified bridge.

After Davis had given this testimony, the prosecutor presented evidence showing that a large quantity of jewelry had been found in the Spokane River. The police had found these items very near the spot where Davis said they would be. However, none of the jewelry found in the river was

connected to either of the charged burglaries.

The trial judge admitted Davis' testimony regarding the uncharged crimes, and the physical evidence of those crimes, on the theory of a "common scheme or plan." The state now argues that the judge's ruling was within his broad discretion to admit evidence. However, the law of evidence is not merely a collection of discretionary guidelines. It is a body of rules. Discretion is properly exercised only when a rule calls for it, and it must be exercised consistently with the tenor of the rules. *State v. Maylett*, 108 Idaho 671, 701 P.2d 291 (Ct.App.1985) (specially concurring opinion).

The admissibility of evidence of uncharged crimes is controlled by I.R.E. 404(b), which reads as follows:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, *plan*, knowledge, identity, or absence of mistake or accident. [Emphasis added.]

We deem the judge's reference in this case to a "common scheme or plan" to be a reference to a "plan" under the rule.[1] The rule must be interpreted in the context of other rules, including I.R.E. 402 (relevancy) and I.R.E. 403 (balancing probative value against unfair prejudice). Thus, in *State v. Roach*, 109 Idaho 973, 712 P.2d 674 (Ct. App.1985), we held that

> [t]he decision to admit evidence of other crimes involves a two-tiered analysis. First, as with all evidence, the proof must be relevant to a material issue concerning the crime charged.... Second, and only if the evidence is deemed relevant, it must be determined whether the probative value of the evidence is out-

weighed by the unfair prejudice to the defendant.

109 Idaho at 974, 712 P.2d at 675.

Davis' testimony and the physical evidence were relevant only if they genuinely tended to show a "plan" integrating the charged and uncharged crimes *and* if such a plan was itself relevant to a material issue in the case. A plan ordinarily is not an element of a criminal offense. It is not an element of burglary or theft. In some cases, however, a plan might be relevant to show the identity of the actor(s). Because the identity of Davis' alleged confederates in the two charged burglaries was an issue in this case, a plan embracing all of the burglaries could have been relevant if, but only if, it tended to prove the identity of those confederates.

■ The value of the testimony and physical evidence for this purpose may be tested by two criteria. First, evidence of other crimes may be relevant to a question of identity if it shows that the charged and uncharged crimes were linked together as stages in the execution of an underlying plan developed by the defendants. *See* cases cited in E.J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3.21 (1984). Under this test, the nexus among the crimes must be clear and direct. For example, evidence of an uncharged car theft may be offered to show an accused's underlying plan to use the car as the getaway for burglaries. Under the second criterion, evidence of uncharged crimes may be relevant to a question of identity if it shows a distinctive *modus operandi* or "signature." *Id.* at § 3.11. *See also State v. Maylett, supra; State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982). This criterion requires an unusually high degree of similarity between the charged and uncharged crimes.

■ In the present case, the prior burglaries and the crimes charged were not shown to be progressive stages of a single plan formed in the minds of the defendants. Rather, each crime was self-con-

---

1. "Common scheme or plan" is a phrase commonly used prior to the Idaho Rules of Evidence. The adoption of I.R.E. 404(b) did not change existing Idaho law on admissibility of evidence in other crimes. *Report of the Idaho State Bar Evidence Committee C 404 p. 4 (1983).*

tained; one was not a step toward the others. The crimes were connected only in the sense that they shared the common goal of getting money. We decline to hold that a desire for money is a unifying "plan" within the meaning of Rule 404(b).

Neither did the burglaries have a distinctively similar *modus operandi*. The "plan" for the uncharged burglaries, as described by Davis, included more premeditation and greater professionalism than was exhibited during the charged crimes. One of the charged burglaries was committed during the daytime, not at night. No phone calls were alleged to have been made before the charged burglaries to determine whether the houses were occupied. Neither binoculars nor walkie-talkies were used. A large, heavy safe was stolen in one of the charged burglaries, rather than the light, easily carried jewelry that was the target of burglaries as "planned." Apart from the separation of valuable and less valuable stolen goods, the only consistent element was the dumping of unwanted items from the bridge. But this element did not connect Bussard and Mason to any of the crimes, charged or uncharged. Even if we postulate that the dumping of unwanted items from a particular bridge was an act so unique as to form a "signature," this act did not necessarily implicate Bussard and Mason. The "signature" may have been Davis' alone.

Davis' testimony was that of a self-proclaimed accomplice in crimes charged and uncharged. His testimony was the only evidence that Bussard and Mason had participated in the uncharged burglaries. What the state did here, in effect, was to present the testimony of an accomplice in the crimes charged, to broaden his testimony by including uncharged crimes, and then to substantiate his testimony on the uncharged crimes with other evidence showing that such crimes did in fact occur. This additional evidence corroborated Davis' admission that he had engaged in the uncharged crimes, but it did not independently tie Bussard and Mason to any of the crimes—charged or uncharged.

Against the tenuous probative value of Davis' testimony and other evidence concerning the uncharged crimes, the trial judge was required to weigh the potential for unfair prejudice. This potential was clearly manifest. The evidence of uncharged crimes tended to portray the defendants as common house burglars, predisposed to commit crimes like those charged. With due respect to the capable trial judge, we believe that his discretion was abused in finding, implicitly, that the potential for unfair prejudice was outweighed by probative value. The evidence of uncharged crimes should not have been admitted to prove the crimes charged.

■ The next question is whether admission of such evidence was harmless error. Rule 52, I.C.R., provides that "any error ... which does not affect substantial rights shall be disregarded." In determining whether an error has affected substantial rights or is harmless, the inquiry is "whether it appears from the record that the ... [error] contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the [error] not occurred." *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983).

■ This case was largely a credibility contest. Bussard and Mason testified that they did not participate in the charged burglaries and related thefts as asserted by Davis. They also offered an alibi witness who testified that they were not at the scenes of the charged burglaries on the day in question. On the other hand, the state's evidence—including certain evidence discussed below—showed that each defendant had possession of fruits of the crimes charged. Stolen property was found in Mason's house and in Bussard's car. But this fact alone would not necessarily compel a conclusion that the defendants had personally engaged in the burglaries and thefts. Although the state's case was thorough and well presented, we are unable to say, beyond a reasonable doubt, that the evidence of uncharged crimes did not contribute to the jury's verdicts. Therefore, we must hold that the error was not harm-

less. The case must be remanded for a new trial.

### III

For guidance on remand we will address the search-and-seizure issues raised by the defendants' motion to suppress. These are: (A) whether all items seized during the search of Mason's residence should be suppressed because the original warrant and inventory were not properly returned to the warrant-issuing magistrate; (B) whether the search warrant for Mason's residence was so vague as to be an impermissible "general warrant;" and (C) whether the sheriff's deputies lawfully searched and seized Bussard's car and its contents.

### A

■ As noted above, an inventory of the items seized at Mason's home was prepared by the deputies executing the search warrant. The warrant and inventory were not returned promptly to a district judge or to a magistrate in the county of the warrant's origin as required by I.C.R. 41(d) and I.C. § 19–4415. However, a copy of the inventory was made available to Bussard and Mason at their preliminary hearing, which was held shortly after the search and several months prior to trial. Thus, both defendants received timely notice of the items seized.

Defects in the return of a search warrant do not rise to constitutional dimensions. *State v. Mason,* 111 Idaho 660, 726 P.2d 772 (Ct.App.1986). In *State v. Curry,* 103 Idaho 332, 647 P.2d 788 (Ct.App.1982), we held that a police officer's failure to list all items seized in an inventory list was a ministerial error and, absent a showing of prejudice by the defendant, the trial court was not required to suppress evidence seized in the search. Similarly, in *State v. Mason, supra,* we determined that a police officer's failure to verify the return of a search warrant did not require suppression of the evidence seized pursuant to the warrant. As in *Curry* and *Mason,* we hold that the procedural defect here does not require suppression. The defendants have made no showing that failure to return the original warrant and inventory materially infringed upon any constitutionally protected interest. Accordingly, there is no need to activate the exclusionary rule.

### B

The defendants next assert that the warrant contained an impermissibly vague description of things to be seized in Mason's home. Of course, search warrants must describe with particularity the items to be seized. *State v. O'Campo,* 103 Idaho 62, 65, 644 P.2d 985, 988 (Ct.App.1982). Here, the warrant authorized officers to search for the following:

> One pearl necklace with a diamond, one small wooden music box with metal discs, one gold necklace with attached gold cross, three jars of assorted U.S. coins, miscellaneous gold and silver jewelry, one wooden jewelry box, approximately $900 in U.S. currency ($20's and $100's).

The defendants contend that this description was insufficiently particular.

■ The contention is partially correct. The search warrant contains some particular descriptions of the things to be seized and one nonparticular description. The phrase "miscellaneous gold and silver jewelry" does not specifically describe the items to be seized. Thus, the warrant is partially overbroad. However, when a search exceeds the scope permitted by a valid (or partially valid) search warrant, the entire search ordinarily is not rendered invalid. Rather, only the property unlawfully seized will be suppressed. *State v. Holman,* 109 Idaho 382, 389, 707 P.2d 493, 500 (Ct.App.1985). *Compare United States v. Medlin,* 842 F.2d 1194 (10th Cir.1988) (suppressing all evidence seized under warrant where officers so flagrantly disregarded the warrant's terms that it was effectively transformed into a general warrant).

■ Moreover, evidence seized during a search, but not specified in the warrant, need not be suppressed if it is seized while in "plain view" of officers who are searching for other items properly described. There are certain prerequisites for applica-

tion of the plain view doctrine. First, the officers must legitimately be in a position to observe the evidence. Second, the incriminating evidence must be discovered as a by-product of other, permissible police activity.[2] Finally, the incriminating nature of the items must be immediately apparent to the officers. *State v. Holman, supra; State v. Caldero,* 109 Idaho 80, 705 P.2d 85 (Ct.App.1985).

■ We believe these requirements have been satisfied here with respect to the items which the district judge refused to suppress. The first requirement has been met because the officers were in Mason's home pursuant to a valid warrant. The second requirement has been satisfied because the items were seized while officers were in the course of searching for objects listed specifically in the warrant. Finally, we conclude that the third requirement has been met in the sense that the officers recognized that the items seized were probably related to criminal activity. The items were found in close proximity to other stolen property described in the warrant. Moreover, the deputies knew that jewelry and coins had been stolen and that fingerprints had not been found at the victims' home. Therefore, the incriminating nature of the items seized—jewelry, coin rolls and rubber gloves—must have been immediately apparent. Their seizure was proper.

## C

Bussard and Mason next contend that impounding Bussard's car, while awaiting a warrant to search it, was a seizure in viola-

tion of the Fourth Amendment. They cite the plurality decision in *Coolidge v. New Hampshire, supra* note 2, in which the United States Supreme Court held invalid the warrantless seizure of an automobile from private property. In contrast, the state cites another plurality opinion, *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), in which the Court upheld the warrantless impoundment of a vehicle found on a public parking lot. The *Cardwell* court distinguished *Coolidge* based on the differing locations of the automobiles when they were seized.

■ Neither of those decisions is wholly dispositive here. In this case, unlike *Coolidge* or *Cardwell,* the police applied for a search warrant and obtained no evidence from the automobile until the warrant was issued. They impounded the vehicle to prevent a possible loss of such evidence in the meantime. In our view, preservation of the status quo pending issuance of a search warrant is permissible where there is a reasonable basis to conclude that the evidence might be removed or disturbed. *See, e.g., State v. Curry, supra* (warrantless seizure of suspect's shoes to preserve their evidentiary integrity). The deputies were understandably concerned that Bussard's automobile might be driven away by other persons with keys to the car, unless immediate steps were taken to secure it. Although the vehicle might have been secured without impounding it—e.g., by posting a guard to prevent anyone from entering or attempting to remove it—such action likely would have

---

**2.** The second prerequisite is occasionally, and perhaps inaccurately, called the "inadvertent discovery" requirement. This terminology gained currency after it was employed by a plurality of the United States Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is a potential source of confusion because the word "inadvertent" may be interpreted to connote an element of accident or surprise. However, police officers conducting a valid search for certain items need not be wholly ignorant of the possibility that they might observe other items of evidentiary value. Rather, as later noted by the United States Supreme Court in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the police simply must refrain from us-

ing the plain view doctrine as a pretext for making a search or seizure that otherwise would require a warrant. Although *Brown,* like *Coolidge,* was decided by a plurality, the *Brown* court was not divided on the meaning of the so-called inadvertence requirement.

Taken together, *Coolidge* and *Brown* make it clear that police officers searching for particularly described items under a valid warrant may seize other incriminating items found in the course of the search. They also make it clear that the police may not use the warrant as a pretext to look for additional items in places or at times unrelated to the search authorized by the warrant. *See, e.g., Carney v. State,* 525 So. 2d 776 (Miss.1988). The record in the present case does not show such pretextual conduct.

prompted the same claim of a "seizure" which is now before us. Under the circumstances of this case we hold that the steps taken by the deputies, in applying for a warrant and securing the automobile until the warrant arrived, were proper.

 Finally, Bussard and Mason argue that the search warrant for Bussard's automobile was issued without a valid finding of probable cause by a magistrate. We are unpersuaded. The underlying decision of the warrant-issuing magistrate is entitled to deferential review. The test is whether, in light of the totality of the circumstances, the magistrate who issued the warrant had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Before issuing the warrant, the issuing magistrate heard the testimony of a sheriff's deputy. The deputy told the magistrate that burglaries had been committed, that Bussard had been arrested and that a search warrant of Mason's residence had been executed. He also stated that Davis, the alleged accomplice, had said Bussard's automobile was used for transporting the stolen goods. Under these circumstances we believe the magistrate had probable cause to believe that the items listed in the warrant were in Bussard's automobile.

Additional issues have been raised concerning trial procedure. However, in view of our remand of the case, we need not discuss them.

The judgments of conviction of burglary and grand theft are vacated. The case is remanded for further proceedings consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.