862 P.2d 343

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ray Marvin NICHOLS, Defendant–Appellant.**

**No. 19968.**

Court of Appeals of Idaho.

Oct. 13, 1993.

Alan E. Trimming, Ada County Public Defender, Richard D. Toothman, Deputy Public Defender, Boise, argued, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, argued, for plaintiff-respondent.

LANSING, Judge.

Defendant-appellant Ray Marvin Nichols was found guilty of robbery and second degree burglary for robbing a Boise bank in January 1992. He appeals the conviction, asserting that it was error for the district court to allow testimony linking Nichols to a similar robbery occurring in Fairbanks, Alaska thirteen days prior to the Boise robbery. We find no error in admission of the testimony and, therefore, affirm.

## I. *Background and Proceedings Below*

The pertinent facts of this case are as follows. On January 2, 1992, a man entered a Boise branch of Farmers and Merchants Bank, threatened to shoot a teller (but without displaying a firearm) and demanded money. The teller complied with the robber's demands, triggering a silent alarm in the process. Nichols was arrested shortly thereafter while fleeing from an area being searched by the police. When arrested, Nichols was in possession of the stolen currency, some of which was marked for identification by the bank. During a search of a motel room where Nichols had been seen, police discovered clothing matching that worn by the robber as well as the bag into which the teller had placed the money. In addition, a wash cloth with makeup residue was found in this room. Nichols later confessed to the crime during an interview conducted by Detective Lance Anderson. At that same time, Nichols confessed to a similar robbery which took place in Fairbanks, Alaska, thirteen days prior to the Boise robbery.

Nichols apparently recanted his confession to the Boise robbery, for at trial the defense theory was that Nichols was not the robber, but had merely found the money lying in the street. In an attempt to raise doubt about Nichols' identity as the robber, the defense emphasized that the state's primary eyewitness, the bank teller, did not observe a birthmark on the robber. This was significant because there was an obvious birthmark on Nichols' face.

Toward the end of the state's case, the prosecution inquired of Detective Anderson about information relating to the Fairbanks robbery that he had relayed to Nichols just prior to Nichols' confession. The following testimony was presented to the jury:

Q. What did you tell Mr. Nichols the information you had concerning the last time he was seen in Fairbanks, Alaska?
A. I told him that we had information that he was last seen at the National Bank of Alaska in Fairbanks.... I indicated to him that there were some very definite similarities in a case that I was looking at involving our bank robbery as compared to a number of inconsistencies in his travel plans that he had indicated and where and how he had purchased his vehicle or traded in his vehicle, and indicated to him that there wasn't any question in my mind that he was responsible for our bank robbery.
At that time he became very emotional and indicated that he had in fact done our bank robbery.

\*   \*   \*   \*   \*   \*

654

Q. Detective, did you inquire of Mr. Nichols whether he had developed a particular, and to use my words, MO in committing bank robberies?

A. Yes.

Q. And did he go into some detail concerning his preparation, plan, motive, and intent concerning preparation for bank robbery?

A. Yes.

Q. And did that include the putting on of makeup?

A. That's correct.

Q. Did it include the specific instructions—or any specific instructions to tellers concerning how money was to be transferred from the bank to him?

A. Yes.

Q. What did he tell you about that?

A. He indicated that he had been advised that you should always instruct bank tellers to not give any dye packs along with the money that you're asking for.

\* \* \* \* \* \*

Q. Did he indicate whether he had used this same scheme or plan to commit a bank robbery, as to clothes and method of operation, at anytime very close to the time of the Farmers & Merchants Bank?

A. Yes.

Q. And what did he tell you about that?

A. He said he had.

Q. And where did he say he had done it?

A. In Fairbanks, Alaska.

Q. Did he give you a date of when he had done it in Fairbanks, Alaska?

A. Yes.

Q. When?

A. The 26th day of December 1991.

Tr. vol. 4 p. 235.

By a mid-trial motion, the defense had sought exclusion of this testimony. Nichols argued that this testimony would violate Idaho Rules of Evidence 403 and 404, which restrict introduction of evidence of other crimes, and also would violate I.R.E. 801 relating to hearsay. The district court denied the motion and allowed the state to present the proffered evidence.

## II.   *The Rule 403 and 404(b) Objection*

■   We consider first Nichols' contention that Idaho Rules of Evidence 403 [1] and 404(b) [2] were violated by admission of the testimony about the Fairbanks robbery which Nichols had confessed to committing. Under Rule 404(b), evidence of prior criminal acts is inadmissible to prove propensity to commit such acts. *See State v. Winkler,* 112 Idaho 917, 736 P.2d 1371 (Ct.App.1987). Evidence of other crimes may be admitted, however, when relevant for other purposes, including proof of knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. *See State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991); *State v. Guinn,* 114 Idaho 30, 34, 752 P.2d 632, 636. (Ct.App.1988). Though relevant, such evidence may still be excluded if the trial court concludes that its prejudicial impact substantially outweighs its probative value. I.R.E. 403. Thus, application of Rules 403 and 404(b) requires the court to make two separate inquiries: (1) is the evidence relevant to a material issue other than character, guilt, or propensity; and (2) does the prejudicial impact substantially outweigh the probative value? *State v. Buzzard,* 110 Idaho 800, 802, 718 P.2d 1238, 1240 (Ct.App.1986).

---

**1.** Rule 403 provides: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**2.** Rule 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ We exercise free review of the trial court's decision on the first element of the test—the determination of the testimony's relevance—because relevancy is not a factual issue nor a matter of judicial discretion. *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993), *petition for review pending; State v. Maylett,* 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct.App.1985) (Burnett, J., concurring). However, the second element of the evaluation—the trial court's determination that the probative value of the evidence outweighs the danger of unfair prejudice—is reviewed under an abuse of discretion standard. *Id.; State v. Medrano,* 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App.1992); *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ With respect to the relevancy of the testimony, at trial the prosecution essentially argued that evidence of the prior robbery in Fairbanks utilizing the same "modus operandi" was relevant to identify Nichols as the Boise robber.[3] This modus operandi included the application of makeup to conceal Nichols' birthmark.

■ Evidence of prior uncharged criminal conduct is admissible to prove the identity of the culprit in a subsequent crime if the prior uncharged acts are "so nearly identical in method as to earmark them as the handiwork of the accused.... The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." 1 McCormick, EVIDENCE, 4th Ed. Ch. 17, § 190, at 801–803 (1992). This criteria has also been defined to require that (1) both crimes were committed with the same or strikingly similar methodology; and (2) the methodology is so unique that both crimes can be attributed to one criminal. Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE,

Ch. 3, § 3.10, at 21 (1991 & 1993 Supp.) In *State v. Bussard,* 114 Idaho 781, 760 P.2d 1197 (Ct.App.1988), we briefly discussed the relevance of identity evidence. Therein we stated that it is admissible if it shows a distinctive "modus operandi or signature." *Id.,* at 785, 760 P.2d at 1201.

In the instant case, the testimony of Detective Anderson relating Nichols' confession to the prior robbery in Fairbanks was relevant to his identity as the person who also committed the Boise robbery. As noted above, the central theme of Nichols' defense was that he had been misidentified. The evidence regarding Nichols' use of makeup in the Fairbanks robbery to disguise his obvious birthmark explained the teller's failure to notice such a mark during the Boise robbery. The unique characteristic of a male robber using makeup to disguise a distinguishing facial feature was tantamount to a "signature" identifying the perpetrator. Thus, the evidence did bear logical relevance to a disputed material issue in the trial—the identity of the robber.

■ Having concluded that the evidence was relevant to identity, we must proceed to the second prong of the standard for admissibility under Rule 403, the trial court's balancing of the probative value against the danger of an unfair prejudicial impact. In weighing these opposing qualities, the trial court exercises discretion. We will not disturb the trial court's decision except upon a showing of abuse of discretion. *State v. Medrano, supra.*

Nichols argues that the weight of the evidence's probative value in this balancing test was diminished by the presence of other significant evidence favorable to the state on the identity issue, including Nichols' confession, the eyewitness identification by the bank teller, Nichols' possession

---

**3.** On the motion in limine the prosecutor argued *inter alia,* that the evidence of the Fairbanks robbery was relevant to show "common scheme or plan, lack of mistake ..., preparation and plan, as to the makeup that he used and admitted using in both the robberies." However, in examining the full record, we find that essentially the state's point was that the evidence was

relevant to the identity issue, as the state now asserts on appeal. In searching out the substance of the state's argument to the trial court, we do not in any way approve the imprecise invocation of "plan or scheme" where the existence of a "plan" is not an element of the crime charged nor relevant to any issue in dispute. *See Medrano,* 123 Idaho at 119, 844 P.2d at 1369.

of the marked currency, and the presence of the bag and the robber's clothing in Nichols' motel room. In other words, he contends that in balancing probative value against unfair prejudice, the probative weight is inversely proportional to the quantum of other evidence probative of the same fact. This is true, Nichols reasons, because the greater the quantity of other evidence identifying Nichols as the robber, the lesser the prosecutor's need for the prior crime evidence in order to prove the state's case. Therefore, he avers, the prejudicial effect of evidence of Nichols' prior crime must necessarily outweigh its comparatively nominal probative value. We cannot agree.

■ We acknowledge that treatises discussing the factors to be considered in making this balancing analysis have identified the need of the offering party for the evidence as one factor to be considered:

> In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, *the need for the evidence, the efficacy of alternative proof,* and the degree to which the evidence probably will rouse the jury to overmastering hostility.

1 McCormick, EVIDENCE Ch. 17 § 190, at 811. (emphasis added) (footnotes omitted). *See also,* Graham, HANDBOOK OF FEDERAL EVIDENCE § 404.5, at 227–229 (3d ed. 1991) and cases cited therein. We agree that the availability of alternative evidence is a factor to be considered by the trial court in exercising its discretion under Rule 403.

We are not persuaded, however, that simply because the prosecution has a very strong case, the probative value of relevant evidence of prior misconduct is inherently outweighed by undue prejudicial impact. The state in a criminal trial bears a heavy burden to prove the defendant's guilt "beyond a reasonable doubt." If probative evidence on one of the elements of the crime is excluded, and an acquittal ensues, the state is given no second chance through a retrial nor any opportunity to reverse the acquittal by challenging the trial court's evidentiary ruling on appeal. I.A.R. 11(c)(4).

In light of these considerations, we cannot say that the evidence of Nichols' prior robbery using a similar modus operandi was so cumulative as to be without significant probative value. Moreover, we note that the rationale of Nichols' "proportionality" analysis arguably applies to lighten the *prejudice* side of the scale, as well as the probative value side, in the Rule 403 balancing test. One could reasonably conclude that the greater the quantum of other evidence of the defendant's guilt, the less the defendant is prejudiced by one more bit of incriminating testimony.

■ When examining the unfair prejudice prong of the balancing test, the court must look to the probable effect of the evidence on the jury. Whether evidence is unfairly prejudicial within the meaning of Rule 403 relates to its tendency to generate hostility or a presumption of guilt in the minds of the jury, or to cause the jury to infer that the defendant is a bad person deserving of punishment in any event. Admission of unnecessary, inflammatory details of a prior crime may require reversal of a conviction even where a more restrained presentation of the fact that the defendant had committed the crime would have been proper. *See, e.g., United States v. Ostrowsky,* 501 F.2d 318, 323 (7th Cir. 1974). In Nichols' case, the evidence was offered in a way that minimized its prejudicial impact. The state did not present this evidence in any manner other than to show that the defendant had committed a similar robbery using a similar modus operandi. The state did not focus on any other details of the Fairbanks robbery or sensationalize the prior crime. Rather, it simply presented the fact that the defendant admitted to having used makeup to cover his birthmark in a prior robbery and having used some other methods of operation similar to those used in the Boise robbery.

Accordingly, there was no abuse of discretion in the trial court's implicit conclusion that the probative value of the evidence outweighed the risk of unfair prejudicial impact.

### III. *The Hearsay Objection*

■ Next we address Nichols' objection to those portions of Detective Anderson's testimony relating information he had obtained from various sources regarding Nichols' involvement in the Fairbanks robbery and Nichols' subsequent journey from Fairbanks to Boise. Nichols contends that Detective Anderson obtained this information from nonwitness third parties and, therefore, the testimony was inadmissible hearsay. The state responds that the testimony was not hearsay because it was not offered for the truth of the matter asserted, but rather to show what prompted Nichols to confess.

Idaho Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is not hearsay if it is not offered for the truth of the matter asserted. *State v. Scroggie,* 110 Idaho 103, 112, 714 P.2d 72, 81 (Ct.App.1986); *State v. Ziegler,* 107 Idaho 1133, 1135, 695 P.2d 1272, 1274 (Ct. App.1985).

The testimony in question was introduced as information which Anderson relayed to Nichols during their second interview. Detective Anderson testified that during the interview he told Nichols what the police had learned about the Fairbanks robbery and about Nichols' travel route from Fairbanks to Boise, the vehicles in which he had traveled, and where he had acquired the vehicles. Anderson testified that Nichols was surprised at the detective's knowledge of Nichols' movements and that shortly thereafter Nichols confessed to committing the Boise robbery. We agree with the state that Anderson's testimony about what he had learned from third parties concerning Nichols' activity in Fairbanks and his travel to Boise was not offered for the truth of any of the facts relayed in the testimony. Rather, it was presented only to show what Nichols was told by the officer, which precipitated Nichols' confession. When testimony is not offered to prove the fact asserted, it does not fall within the definition of hearsay. Therefore, the trial court did not err in admitting the testimony.

Having concluded that the evidence challenged on this appeal was properly admitted at trial, we affirm the judgment of conviction.

WALTERS, C.J., and PERRY, J., concur.